SHAW, Justice
(dissenting).
In enacting the Health Care Authorities Act of 1982, § 22-21-310 et seq., Ala.Code 1975 (“the HCA Act”), the legislature recognized that publieally owned hospitals, and not investor-owned or community-nonprofit hospitals, furnish a substantial part of indigent health-care services in Alabama. The HCA Act thus established a structure wherein certain governmental entities in the State could create organizations — health-care authorities — to operate health-care facilities such as hospitals. In this case, the Board of Trustees of the University of Alabama (“the Board”) organized such an authority (“the Authority”). As noted in the main opinion, the Authority is controlled by a board of directors, a majority of which are appointed by the Board. The Authority owns and operates several hospitals, provides community-based health-care services in the Montgomery area, and supports the academic and research mission of the Board.
The law is clear that the Board is an arm of the State; under the Alabama Constitution, it cannot be sued. Ala. Const. 1901, Art. I, § 14. The question that arises is whether the Authority shares that protection from suit. I believe that it does.
In Ex parte Greater Mobile-Washington County Mental Health-Mental Retardation Board, Inc., 940 So.2d 990 (Ala.2006), which is discussed extensively in the main opinion and in Justice Bolin’s dissent, this Court applied the three-part test found in Armory Commission of Alabama v. Staudt, 388 So.2d 991 (Ala.1980), to determine whether a public corporation qualified as the State of Alabama for purposes of § 14. I see no need to repeat the extensive discussions of Greater Mobile-Washington County Mental Health Board found in those writings; instead, I will note that I believe that the case is distinguishable. The public corporation in that case acted autonomously with minimal oversight and assisted State and local agencies through contracts. 940 So.2d at 1004. Here, the Authority is controlled by a board of directors dominated by the Board’s nominees, and it was created as a means through which the Board’s expertise and resources could be used to rescue the hospitals the Authority now owns and operates from the financial difficulties of their previous owner, Baptist Health. The Authority operates to serve a public purpose — to provide health care — and to support the Board’s academic and research missions and the other entities the Board controls. Unlike the isolated or autonomous entity in Greater Mobile-Washington County Mental Health Board, I cannot separate the purpose, role, and existence of the Authority from that of its creator, the Board.
Furthermore, Ala.Code 1975, § 22-21-318(c)(2), explicitly states that the Authority “acts as an agency or instrumentality of its authorizing subdivision[ ] and as a political subdivision of the state.” This means that the Authority acts as “a political subdivision of the state” and an “agency or instrumentality” of the Board, its “authorizing subdivision,” which, under the constitution, “shall never be made a defendant in any court of law or equity.” Ala. Const. 1901, Art. I, § 14. If this is true, as the legislature states, I find it difficult to take the internally inconsistent view that the Authority is to be considered “the State” when competing in the health-care marketplace but not considered “the State” when dispensing health care to patients.
STUART, J., concurs.